MICHELE BECKWITH
Acting United States Attorney
JOSEPH D. BARTON
CODY S. CHAPPLE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>              v.<br><br>ANDREW ADLER,<br><br>                  Defendant. | CASE NO. 1:25-CR-00017-JLT-SKO<br><br>GOVERNMENT SENTENCING MEMORANDUM |

The defendant, Andrew Adler, defrauded victims out of millions of dollars. He made a calculated decision to commit this crime by altering documents, forging signatures, and lying to people. Worse yet, he admitted in the PSR that he was motivated by pure greed. For that, he should receive a significant prison sentence.

**I.**    **Factual Background**

From December 2022 through May 2023, Mr. Adler, and his business partner, David Hardcastle, gave the failed Fresno-based startup company, Bitwise Industries ("Bitwise"), over $20,000,000 in hard money loans. Bitwise was financially struggling at the time and was desperate, and was therefore willing to pay exorbitant interest rates of 60 percent.

Messrs. Adler and Hardcastle did not fund the loans themselves or otherwise put their own money at risk. Instead, they syndicated the loans to other participants. In doing so, they altered the original loan documents, and forged the signature of Bitwise's CEO thereon, to make it appear as though Bitwise was obligated to pay significantly less interest on the loans than was true. They then doubled down on these lies in their meetings with the participants. This made the loans appear less risky and more appealing to them.

One of the loans included a secure interest reserve of approximately $714,000 that the participants did not know about and that Messrs. Adler and Hardcastle used to make an unrelated investment in another company that they controlled. Generally speaking, secure interest reserves are disclosed to loan participants ahead of time and are supposed to help protect the participants in the event that the borrower does not make its payments on schedule. Secure interest reserves are not supposed to be used for the personal benefit of the loan originators like Messrs. Adler and Hardcastle. Importantly, Mr. Adler admitted in an interview with the government that he knew what he did with the secure interest reserve was wrong. *See* Dkt. 15, Pg. 5, Para. 9, 17. This shows he acted with intent to defraud

Messrs. Adler and Hardcastle also made tens of thousands of dollars in fees for originating the loans. And they stood to make millions more in secret profits from the higher, undisclosed interest rates had the loans been fully repaid. Unfortunately, however, Bitwise turned out to be a Ponzi scheme and collapsed before that could happen. As a result, the participants lost nearly all of their money.

## II.     PSR's Calculations are Correct

Eleven of the participants, who together funded over $9,300,000 of the loans to Bitwise, told the FBI that they would not have participated in the loans, or would have participated on materially different terms, had they known the true interest rates that Bitwise was obligated to pay. Mr. Adler admitted as much in his plea agreement by agreeing that his offense level should be increased by two points because the offense involved at least these 11 victims. *See* Dkt. 3 at Pg. 9, L. 7-8. The factual basis for his plea agreement similarly states that "over ten of the participants who together funded more than $3,500,000 of the loans" were defrauded. *See* Dkt. 3 at Pg. 13, L. 21-22 through Pg. 14, L. 1-2. These facts support the summary of the offense conduct, offense level calculation of 22, and guideline calculation of 41 to 51 months in the PSR and rebut arguments to the contrary that Mr. Adler makes in his sentencing

memorandum.[1]  The Court should not let Mr. Adler backtrack from his plea agreement.  He must face the consequences.

### III. Adler's After the Fact Payment to Victim Who Wrote Character Reference Letter

Mr. Adler emphasizes in his sentencing memorandum that some of the victims, such as D.R., wrote character reference letters for him asking the Court for leniency.  Mr. Adler does not mention the fact that he paid D.R. after the fraud was completed and detected.  Specifically, D.R. told the FBI that a few months after Bitwise collapsed and the money was gone, Mr. Adler gave him general shares in the same company in which Messrs. Adler and Hardcastle improperly invested the secure interest reserve to try to make up for some of the losses.  The government will have a copy of D.R.'s FBI interview memorandum available for the Court's review upon request.  The Court should consider this type of negative information when assessing the credibility of the character reference letters that Mr. Adler has submitted to it.

### IV. Incriminating Text Messages

The text messages that Messrs. Adler and Hardcastle exchanged with each other about their plan to hide the true interest rates from the participants show that Mr. Adler acted with purpose and disregard for the victims.  The text messages also demonstrate his arrogance and sense of entitlement.  For example, in text messages dated December 2022 and January 2023, Mr. Adler told Mr. Hardcastle: "I got ideas how to squeeze money out of this on the participant side too," "I see plenty of ways to make a million this year," and "this is big league as fuck."  The government will have copies of these text messages available for the Court's review upon request.

### V. Lack of Mitigating Factors

There is no excuse for Mr. Adler's misconduct.  As discussed in the PSR, he had an idyllic upbringing with loving parents and plenty of resources and opportunities.  He then went on to obtain a master's degree in business administration from an elite college and work good paying jobs in the

---

[1] Some of the participants in the loans are wealthy individuals who are friends or associates of either Mr. Adler himself or his family members, and they initially told the FBI that they did not care what the true interest rates for the loans were and that they had not been defrauded.  The government believes that their assertions were unreasonable and that they were trying to protect Mr. Adler.  Nonetheless, and out of an abundance of caution, these participants have been excluded from the above-referenced calculations.

financial sector. He does not have any serious health or substance abuse issues. Nor does he have any dependents who will go without care in his absence. Moreover, he is in his 30s, which undercuts any argument that his misconduct was due to a youthful lapse in judgment. In short, there is no good reason to give Mr. Adler a break.

### VI. Mr. Adler's Pre-Indictment Resolution has Already Been Taken into Account

Mr. Adler agreed to resolve his case pre-indictment and plead guilty separately from Mr. Hardcastle whose case is pending. In exchange, the government agreed to forego other potential charges against Mr. Adler. This included aggravated identity theft charges for forging the signature of Bitwise's CEO on the altered loan documents, which would have carried a two-year prison sentence that ran consecutive to the sentence that Mr. Adler receives for the underlying fraud. The government also agreed to recommend that Mr. Adler be sentenced at the low-end of the guidelines, which would be 41 months in prison assuming that the Court adopts the calculations in the PSR. These concessions adequately reward Mr. Adler for promptly resolving his case. No further concessions are warranted and a low-end of the guideline sentence is appropriate here.[2]

### VII. Victim Impact Statements

The government has received victim impact statements from two of the victims in this case. These statements will be filed with the Court under seal to protect the victims' identities. The statements describe the great lengths to which Mr. Adler went to carry out his fraud and the hurt that he caused. The Court should give the statements significant weight in determining Mr. Adler's sentence.

### VIII. Conclusion and Recommended Sentence

For these reasons, the government recommends that Mr. Adler be sentenced to 41 months in prison, three years of supervised release, and full restitution. This is a low-end of the guideline sentence and is consistent with the parties' plea agreement. The government believes that its recommended sentence sufficiently reflects the seriousness of Mr. Adler's misconduct, punishes him, and promotes

---

[2] Mr. Adler appears to argue, or at least imply, in his sentencing memorandum that he cooperated with the government in this case. While the government appreciates that Mr. Adler accepted responsibility early on, that is not cooperation. The government wants to make clear to the Court that it did not offer Mr. Adler any cooperation credit. Any assertion to the contrary by Mr. Adler is incorrect. He is trying desperately to avoid prison. The Court should not reward that type of behavior.

specific and general deterrence while also accounting for Mr. Adler's individual characteristics under 18 U.S.C. § 3553(a).

Dated: May 28, 2025

MICHELE BECKWITH
Acting United States Attorney

By: /s/ Joseph Barton
Joseph Barton
Cody Chapple
Assistant United States Attorneys