ILLOVSKY GATES & CALIA LLP
Eugene Illovsky (State Bar No. 117892)
eugene@illovskygates.com
Sharon Frase (State Bar No. 282923)
sharon@illovskygates.com
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorneys for Defendant Andrew Adler

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 25-cr-0017-JLT-SKO |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT ANDREW ADLER'S RESPONSE TO GOVERNMENT SENTENCING MEMORANDUM** |
| ANDREW ADLER, | |
| Defendant. | |

Defendant Andrew Adler respectfully submits this response to the sentencing memorandum by the government. ECF No 17. The government does not address for the Court the authorities supporting Mr. Adler's legal argument regarding loss causation or the use of actual gain as the appropriate, proxy measure of loss under U.S.S.G. § 2B1.1(b)(1)(B). *See* ECF No. 16 at 8-9, 11-12. The government instead offers a few unsupported assertions about Mr. Adler that, in its view, support a sentence that would be one-third of the 131 months Jake Soberal got for stealing $115 million (and two-fifths of the 108 months for Irma Olguin). This even though the government's view (which we contest) of the purported loss caused—but not stolen—by Mr. Adler is one-tenth of the loss in Soberal's case.

The government urges this disproportionate outcome even though it must acknowledge that Mr. Adler was ignorant—indeed a victim—of the Bitwise fraud, did not steal the loan proceeds, and did not intend to steal the loan proceeds. Refusing to acknowledge this leads to the absurd

conclusion that Mr. Adler intentionally defrauded himself of $422,000,[1] his in-laws of $50,000, his best college friend of $100,000, his contractor of $500,000, and a trusted friend and banker with whom he regularly transacts of $650,000, among others whom he must look in the eye every day.[2]

We address briefly here certain assertions the government makes, to avoid getting bogged down at the sentencing hearing:

1. The government casts baseless suspicion on Mr. Adler's attempt to respond to a request from "DR," the largest StarTop participant, to compensate some part of his $5.5 million loss. ECF 17 at 3 ln 4-12.  First, it is not correct that DR received shares "in the same company in which [StarTop] invested the interest reserve." *Id*. at 3 ln. 7-8.  DR received a membership interest, not in Voyager Pacific Opportunity Fund ("Voyager"), but in another company, Voyager Pacific Capital Management ("VPCM"), which entitled DR to fee income (and he has received those fees for the last two years).  Second, Mr. Adler did not "give" this interest to DR; DR bargained at arm's length to assign $1.5 million of his participation interest back to StarTop in exchange for the membership interest.  Third, the government casts this arrangement in a negative light based on the fictional assertion that Mr. Adler "controlled" Voyager, which apparently dissipated the loaned funds.  As the government knows, Mr. Adler did not know what David Hardcastle (who controlled Voyager) did with those loan proceeds.  Finally, the assignment to DR did *not* occur "after the fraud was . . . detected." ECF 17 at 3 ln. 6.  If it had, DR's purported loss would be his entire $5.5 million investment, rather than the lower $4 million figure in the PSR.  ECF No. 15-5 at 11.

---

[1] Mr. Adler's share of StarTop's investment in the Bitwise loans was $172,500.  In addition, his share of a subsequent loan StarTop made to Bitwise in April 2023 was $250,000.  The government's assertion that he put none of its own funds at risk, ECF No. 17 at 2 ln. 1-2, is not accurate.

[2] Remarkably, the government does not have kind words for those Participants who lost money but deny they were defrauded, saying their statements were "unreasonable" and they were trying to "protect" Mr. Adler.  Gov. Mem. at 3 n. 1.  These innocent individuals, all *victims of the Bitwise fraud*, should not be tarred with an inference that they were somehow trying to thwart justice in their interviews with the government.  Rather than "unreasonable," the Participants' views are consistent with blaming Soberal for their losses.  Even in the two victim impact statements (one of which, curiously, seems to be anonymous), we see frustration with the lies *Soberal* told—about the collateral Bitwise put up, the accuracy of the due diligence materials Bitwise provided, the truth of Bitwise's cash position, and the company's phantom business success.  Their statements reflect that they hold the mistaken belief, not shared by the government or by many other Participants, that Mr. Adler was "in" on Soberal's fraud.

2.  The government's assertion that loan originators "are not supposed to" invest interest reserves in a related company is offered with no factual or legal support. ECF 17 at 2 ln. 11-12. The statement that Mr. Adler benefited personally from the loan to Voyager is also incorrect. Hardcastle had control of StarTop's accounts, and he used StarTop's share of the Voyager loan payments to pay StarTop's attorneys in their attempt to recover the collateral. More importantly, the StarTop Participants received their share of the interest reserve, so there was no loss.

3.  Mr. Adler did not tell Probation he was "motivated by pure greed." ECF 17 at 1 ln. 21. He acknowledged greed was a factor in his decision to lie to Participants about the interest rate. The motivation was greed with respect to the additional profits StarTop would earn, and a desire to prevent the Participants from end running around StarTop to obtain higher interest for themselves. It was not greed for the loan proceeds, which Mr. Adler did not retain and did not steal.[3]

4.  The government also assumes incorrectly that Mr. Adler does not have "dependents who will go without care in his absence." Mr. Adler has an infant daughter, and he is the primary financial support for the family. Mr. Adler's wife, who will have to work in his absence, does not earn enough to afford child care. ECF 15 at p. 12.

5.  Mr. Adler is not trying to "imply. . . that he cooperated in this case." ECF 17 at 4 n. 2. It is true that Mr. Adler was not offered cooperation credit. The point is that Mr. Adler has been asked to provide information in connection with two other cases, which he has done voluntarily *without* a promise of credit.

## CONCLUSION

An appropriate sentence will hold Mr. Adler responsible for what he did, which was lie about a loan term, without improperly punishing him for a what someone else did, which was defraud StarTop's Participants (including Mr. Adler) of their entire investment. The government's sentencing recommendation improperly conflates those two completely separate acts to justify not only an incorrect Guidelines calculation, but a sentence that does not adequately reflect the unique

---

[3] The government also points to origination fees StarTop made on the loans, ECF 17 at 2 ln. 15, but it is not clear why. The origination fees were disclosed to the Participants. Moreover, as a technical matter, StarTop did not "syndicate the loans." ECF 17 at 2 ln. 2. Probation made this correction in the PSR. ECF 13 at ¶ 5; ECF 15-2 at ¶ 2; ECF 15 ¶ 5.

circumstances of Mr. Adler's crime, his history and characteristics, and the Court's need to avoid unwarranted sentencing disparities.

DATED: May 30, 2025                    ILLOVSKY GATES & CALIA LLP

                                                                                  */s/ Eugene Illovsky*
Eugene Illovsky
Sharon Frase

Attorneys for Defendant
Andrew Adler